Good morning, Your Honors. Renee Manis appearing on behalf of the petitioner and the appellant, Mr. Medero Moon. We do not dispute that Mr. Medero Moon committed a very, very serious crime. Keep your voice up, please. I'm sorry, Your Honor. We do not dispute that Mr. Medero Moon committed a very, very serious crime and that he should and is being punished significantly for that crime. He committed the crime of aggravated murder and also, while pending trial on that issue, committed the crime of assault of another individual. His combined sentences for those two crimes are 30 years and then an additional 70 months, so another 5 years and 10 months before he can even be considered for the possibility of parole. At that point in time, he will be almost 56 years old. The question presented today is whether Mr. Moon should be required to serve an additional 230 months for conduct which everyone is in agreement is not criminal. The state has conceded that Mr. Moon's conduct was not the crime of kidnapping under Oregon law. The Oregon court, the post-conviction court, found both factually and- In their brief. The concession, Your Honor, actually, I've lost my glasses, but the concession is on the record. We state it in the reply brief. I believe it's about page 4 in the reply brief. When you say on the record, do you mean it was before the magistrate judge? Yes, Your Honor. And if we go to the reply brief, the specific statement, it's also in the excerpts of records at page 206. If petitioner, that is Mr. Moon, walked into Multnomah County Courthouse today based on these same factual circumstances, he could not be convicted of kidnapping based on the law as it currently stands. And that's not just state versus Woolley. That's several cases since the decision in Woolley that have made that fact very, very clear. There is no dispute, I do not believe, between the parties that the conduct Mr. Moon engaged in does not constitute kidnapping as a matter of law or fact. The question then is whether he is entitled or is going to be required to serve a sentence of 230 months for conduct, which is not a crime. We believe he cannot constitutionally be required to serve that sentence. We believe clearly established Supreme Court authority confirms that proposition. That authority starts with Jackson v. Virginia in 1979. So as I understand it, there's a question as to whether any of the claims he's making, the claim three and five, I guess it is, are properly before us or they're not exhausted because they haven't been raised to the highest state court or are procedurally defaulted. And the judge said, I think it was the magistrate judge said, or assumed that they were procedurally defaulted, but what I saw was that they hadn't been exhausted. So can you address that issue? Certainly, Your Honor. Under the doctrine of exhaustion and procedural default, since the Supreme Court decided the O'Scanlan decision, the two have somewhat merged. I personally am always upset when people say it's unexhausted and therefore procedurally barred. I do believe that the two are separate and distinct. The state court, in other words, the state statute, as I understand it, does have a provision allowing a claim to be brought if it's based on new evidence or new information that he couldn't have gotten. So I guess the question for us would be, could your client here bring his claim back to the state court and they would hear it? Because otherwise it hasn't been fairly presented to the state Supreme Court, and I haven't heard the state expressly waive exhaustion. The state argued below that the claim was unexhausted and therefore procedurally barred, and proceeded with the procedural bar analysis. There was, I don't believe, ever a consideration by any of the parties as to whether or not this claim should return, because in fact, the post-conviction court did address the ineffective assistance of counsel claim. Well, one claim, but the other two claims were not fairly presented to the state Supreme Court, so we don't have jurisdiction over those, because they weren't exhausted. Under O'Scanlan, by exhaustion they are also now procedurally barred. That assumes, though, the question, that assumes that there's no way you could take these claims back to the, present these claims now to the Oregon Supreme Court, and the Oregon Supreme Court would not entertain them. I would have to go back to the briefing in the district court level, Your Honor, which I did not include in the excerpts, but I believe specifically within the answer and in the response, the statement of the court, or I'm sorry, the statement of the government was that these claims had not properly been presented, could not now be raised, and therefore were procedurally barred. Could not be raised now before the Oregon Supreme Court. To the Oregon Supreme Court. I mean, they said they couldn't be raised to the district court. But they would, in other words, the statute says that the state must expressly waive exhaustion. It's not enough to implicitly waive it. I believe the response and the answer, and we can certainly present those to the court, they're in the clerk's record. They would not include it in the excerpt of record. But the specific statement was that they could not, at this point in time, timely be presented to the Oregon courts in a manner in which they would be considered. Ergo, they were now procedurally barred. And that is why we all went into the schlup analysis of the excuse for procedural bar for claims of actual innocence. So somewhere in the record, the state said these claims, claim three and five, cannot be presented to the state supreme court or the state court system. So they're technically exhausted and therefore procedurally barred. Is that what you're telling me? Yes, your honor. I believe that would be in both the answer and or the reply filed by the state. In the district court. In the district court. And we have not included those in the excerpts of records, but I believe we certainly could do so. And all the parties operated in briefing before the district court without any contention that these claims could now be timely, properly presented and considered on the substantive merits to the Oregon courts. That is why there was extensive briefing on the issue of whether or not Mr. Moon's claims. Other than the one IAC claim that was exhausted and ruled upon, you have to get through the schlup gateway. Correct, your honor. In order for us to get to the merits of claims three and five. Yes, your honor. Correct? Yes, your honor. How do you get through the gateway? The gateway applies for claims of actual innocence. And in particular, applies for claims of actual innocence that are based on changes in the law. And that's what the Ninth Circuit held in the Alamalo case, A-L-A-I-M-O-L versus United States. Where this circuit specifically held the schlup gateway is met when the claim is based on legal innocence versus factual innocence. For instance, the Supreme Court has also impliedly reached that issue in the Boosley decision. Where Mr. Boosley's claim was clearly long past the procedural posture in which he should have been raised. It was years after his conviction was final and his date for even filing a petition pursuant to 2255 had passed. He brought it after the decision in Bailey changed the law. And there was no question that his claim was long after appropriately raised. And yet because it was a claim of actual innocence, it was a claim of actual innocence based upon a law now clarifying what, in fact, the crime was. And clarified that the conduct at issue was not criminal. He could then bring that claim. So, as I understand the state's argument, or one of their main arguments, is that also language in Boosley, which says that if the government has forgone more serious charges in the plea bargaining process. Then the defendant trying to get through the schlup gateway would have to show that that more serious charge. There was also actual innocence as to it. So can you address that contention? Certainly, Your Honor. And that is, in fact, I think where the district court came down. And what I think the district court was not examining was the law of the state of Oregon, and specifically state versus Barrett. The charges against Mr. Moon come down to aggravated murder, potentially robbery, potentially burglary, and potentially kidnapping. Aggravated murder was charged against him under six different theories. But it is one crime. There was one individual who was murdered. It is one crime. Oregon law is very clear that all charges, all alternative theories of aggravated murder merge into one crime. Mr. Moon pled guilty to the crime of aggravated murder. He has not foregone punishment for that. He did not avoid punishment for that. The subsidiary other felonies, the robbery and the burglary, the state explained to the district court and the district court that Mr. Moon pled guilty to, the only charge that could stand independent that was not going to merge into the aggravated murder to which Mr. Moon pled guilty was kidnapping, and kidnapping alone, because it was separate and distinct. So after Mr. Moon breached the plea agreement by declining to testify, and there was a resentencing, or there was a sentencing, I didn't see testimony about the aggravated murder charge. Everything, the preliminary sentencing report, everything focused solely on the kidnapping, 230 months or whatever. Where did the district court address the aggravated murder? And did the state, because I think the state was free to pursue life without parole for the aggravated murder, but they did not. They let it rest with the life with the possibility of parole after 30 years. Where was that analysis, or where did the state court rule on that? Mr. Moon did breach the plea by not testifying against Mr. Davis, but actually breached the plea almost immediately by seeking to have it set aside. At that point, the state was relieved of any promises it had made to Mr. Moon under the plea. It certainly could have sought life without the possibility of parole. There is no indication, the indication of the record is clearly that it chose not to do so. What is the indication in the record? Where in the record is that expressed? By the fact that that is what the sentence is, there would have had to have been factual development analysis and argument back and forth at the time of sentencing. The sentence for aggravated murder that Mr. Moon could have faced, given his age at the time of the crime, was life with possibility of parole after 30 years. Or life without the possibility of parole. The prosecution sought life with the possibility of parole. They then sought an additional sentence on kidnapping. They did not correlate our decision for life with the possibility of parole to an additional sentence on kidnapping. They sought the additional sentence on kidnapping, and the state court imposed the additional sentence on kidnapping on the specific statement that this is a separate and distinct crime, causing a separate and distinct harm. There wasn't a trade off, and realistically, for the last ten years, Mr. Moon has been seeking to set aside his kidnapping, the state sentence on kidnapping, and his conviction on kidnapping. The state has never at any point in time said, well, if you want to set that aside, we would like to go back and try for life without possibility of parole. That has just never been at issue. And I think that there are very good reasons for that. Mr. Moon was a 17 year old man at the time of this crime. The evidence in the record and developed in state post conviction reflects that he suffers from borderline mental retardation. There is significant mitigation. The sentence of 30 years plus an additional 70 months means that he will serve at a minimum time in prison until he's eligible for parole to be 56. I don't think that had those issues been presented to a fact finder, it would have been unreasonable for any fact finder to have found that that was sufficient punishment. Of the three individuals involved in this crime, the most culpable individual, the older gentleman who was the head of the gang, is serving a life without possibility of parole since the young woman who participated and identified the subject has served 17 years. So finding that Mr. Moon would come somewhere in between there, I don't think would have been unreasonable for any fact finder. If there's no other questions, I have 52 seconds for rebuttal. Thank you, your honors. Yes. May it please the court, Carolyn Alexander for Rick Corsi. I'd like to focus the first part of my argument on Bowsley because that's the analysis this court has to do in order to find that Mr. Moon. Before you do that, could you start off with Judge Acuda's questions at the outset, whether or not these claims are procedurally defaulted. In other words, is there any possibility that he could file a petition, habeas petition, in the state court now, either at the lower courts or in the Oregon Supreme Court, raise these claims, three and five, and given the change in the law and what not, that the Oregon Supreme Court could grant relief? And the answer to that question is no. I agree with the petitioner's counsel. Yes. What happened is, now I think the primary claim here is the due process claim, claim five. And that's going to be the focus of my argument. But he specifically raised that claim to the state post-conviction court. Now, the state- Wasn't it differently stated? Was that the one that was, no, that was. So what did he raise, what argument did he raise to the trial court? That was one he didn't appeal, is that right? Yes, on direct appeal, he only challenged the kidnapping sentence on Blakely Apprendi grounds. And then in the state post-conviction proceeding, in that petition, he raised that due process or insufficient evidence claim under State v. Woolleyot, as well as certain trial counsel claims. However, to the Oregon Supreme, no, I'm sorry, to the Court of Appeals, he only, and to the Oregon Supreme Court, he only raised the one counsel claim. So the due process insufficient evidence claim is defaulted for that reason. And it's that unique situation under AEDPA where you've got a state post-conviction court ruling on the claim, the due process insufficient evidence claim, but he's defaulted it on appeal. So you get that odd combination of default and deference. I don't think he could ever get to the Oregon Supreme Court. I mean, could he file a petition for habeas review in the Oregon Supreme Court? No, the time to do so has passed. And so there's no procedural mechanism to allow him to do that. It's technically exhausted, then. Technically exhausted, now procedurally defaulted. Absolutely. Okay. So before we can reach the merits of either of the claims, we have to determine whether he can get through the Schlecht gateway. Correct. And so opposing counsel says the State has conceded that his conduct did not constitute kidnapping under Woolleyot. Is that correct? That is not correct, Your Honor. Now, in the district court, I will readily admit that the State's attorney overstated the post-conviction court's factual findings on that issue. What the State post-conviction court found, and that's the relevant focus here, is that Petitioner could not now be convicted under State v. Woolleyot based on the police reports alone. And that's reflected in the post-conviction court's hearing transcript as well as the written judgment. So that matters. Is there more evidence that the State would put on that could show that what he, what Mr. Moon did constitute kidnapping even under Woolleyot? And that's exactly the problem, Your Honor. No, there's not. We don't know what that evidence is because this was a guilty plea. That's the problem. We can't do that. Well, that suggests you should have a hearing in the district court on that. So the State would want the opportunity to determine whether there's evidence? Is that what you're saying? I'm saying that for purposes of Bowsley and for purposes of the due process claim, it makes a difference that the State has not had that opportunity. Now, if I could move to Bowsley, I'll explain what the district court's reasoning was and why that didn't happen. So there's really three considerations under these facts under Bowsley. And the first one is factual innocence. Now, Bowsley was a plea case. And what the US Supreme Court said in Bowsley is that a petitioner to show actual innocence under schlup has to show not just legal insufficiency, but factual innocence. Now, US v. Alamalo was not a schlup case. That case doesn't apply here. Bowsley does. So what happened in Bowsley was the court, it was a federal 2255 case. The Supreme Court remanded that to allow exactly that for the State to present all admissible evidence, not just the evidence in the guilty plea, but all admissible evidence on that challenged element. That hasn't happened here, but that's the showing the petitioner has to make under Bowsley. The district court went a different way. Also in Bowsley, the Supreme Court said that if the State has foregone more serious charges, the petitioner has to show actual innocence as to those charges. District court's analysis was very clean. It simply said, in this plea bargaining and dismissal, the State has dismissed three counts of aggravated murder. Those are more serious charges. He has not shown that he's actually innocent. But the State didn't end up giving up anything, right? Because you only could have gotten one conviction of aggravated murder, and the State got that conviction of aggravated murder. It seemed like Bowsley was talking about if the State gave up something in exchange for the plea deal, it gave up a charge. But you got everything you were entitled to, which was the aggravated murder offense. But that's not correct, Your Honor. And that's exactly the third. You've gotten more than one aggravated murder count? No, there's two issues here. And that is the third consideration under Bowsley. And I would. But what would you have gotten? What did you give up? Because you got a conviction on the aggravated murder count, and you could have gone after the breach for life without parole. What more could you have gotten that you gave up? At the point the Petitioner breached, the State understood that the kidnapping conviction was still good. Had the State known at that time that there would be an ultimate challenge to the kidnapping conviction, and potentially that 230-month sentence could go away, it very well could have sought for that bargaining. The State just made a bad decision. I mean, they could have gone. The plea had been breached. The plea was no more. You hadn't given up anything. You could have gone for both life without parole on the aggravated murder and the 230 months on the kidnapping. So that wasn't part of the negotiations. You didn't give up. The State didn't give up anything as part of the negotiations. Again, had the State known. Well, tell me about what you gave up as part of the plea. A life without parole sentence. And I would direct the Court to United States v. CASA. You said you gave up life without parole. Life without parole. When he breached the agreement. At the time. Did that still leave the Court with, you know, could only impose life with the possibility of parole? Well, couldn't you have gone forward to get the, to ask the Court to impose life without parole? At the time of the breach, certainly. But the State understood the kidnapping charge was good. And that was what it had bargained for. Now. But the bargain was gone, right? Because the plea was breached. So the State and defendant were back to square one. And the State could pursue whatever it wanted. At the point of the breach? Right. So the concern in Boosley that the State gave up something for the plea agreement is really, I just don't see how it's triggered here. Because the plea agreement was breached. And the State was free to do whatever it wanted. At the point when it believed the kidnapping conviction was good. The reason I point out. But Boosley doesn't address what the State misunderstood the law to be. If I could answer your question, Your Honor. In United States v. CASO, this is the D.C. Circuit. Granted, it's not our circuit. But the D.C. Circuit does a fabulous job of talking about the rationale of Bowsley. Bowsley is not a very helpful opinion. It doesn't say much. It doesn't talk about what the rationale is. It doesn't explain what a more serious offense is. CASO does exactly that. And while it's not binding, it's very instructive. And CASO talks about the dynamics of plea bargaining and the equities of plea bargaining. The dynamics of plea bargaining are this. We don't know what would have happened. Had the State known that the kidnapping conviction would ultimately be infirm. It could have proceeded to go to trial. It could have bargained for a life without parole sentence. And CASO says, granted, Petitioner might not have done that. But that could have happened. As terms of the equities of plea bargaining, what the problem becomes is if the Petitioner gets a windfall. And that's exactly what happens here. He bargains for life with parole. He agrees and admits, yes, I intended to substantially interfere with the victim's liberty. I met that element. He's sentenced on kidnapping. He doesn't like the 230-month sentence that the trial court decided to impose. And so he challenges the kidnapping conviction. If that kidnapping conviction goes away, he gets the benefit of his breach, doesn't testify against Calvin Davis, doesn't get an extra sentence on kidnapping or any other consecutive sentence related to this particular crime. And that's what CASO talks about is the problem. And that's why we look, and CASO goes on to talk about, we also look at the sentence that the State could have gotten. Based on the charges that the government brought, because Basley does say you can't go back and say, oh, I should have brought some additional charges based on that conduct.  But if you're talking about kidnapping, at the point when you actually pursued sentencing, there wasn't really anything more you could have gotten. Isn't that right? I guess I'm confused, because you're talking about how you were bound by the plea agreement, but you weren't bound. The plea agreement was breached, and you had the same options you had at the point when you brought the charges. Again, the State's goal was to get an additional consecutive sentence in addition to the plea agreement. Could you have gotten that under Wolliat if you had? In other words, let's say there was no plea negotiations at all, and you had brought the charges you brought, what could you have gotten more? Could you have gotten, because all you brought was aggravated murder and kidnapping, could you have gotten something else based on the charges you brought? Yes. What would that be? Yes. And again, I refer the Court to State v. Barrett, but specifically footnote 4. What the State could have gotten is aggravated murder with an underlying burglary either to conceal or in the commission of, additional aggravated murder counts that would become alternative theories, one conviction, alternative theories. Should one go away, you've got additional theories. Barrett talks about why that's important. And then under State v. Barrett, footnote 4, the State could have gotten an additional consecutive robbery sentence. So I disagree with counsel that the State could not have gotten that. The State could very well get that. Was the robbery count charged separately? Excuse me, Your Honor? Was the robbery charged separately? Yes. Yes. So all three, kidnapping, burglary, and robbery were all charged as separate felonies. The State lawyer said to the magistrate judge, all of these merge into aggravated murder, so that's cited by. No, the separate felonies do not merge into aggravated murder. Depends on the structure of the sentence. Now, granted, the State could only, or the trial court could only have imposed a 120-month departure sentence on robbery because it's a lesser crime on the sentencing guidelines grant. But it could have restructured the sentencing. But I don't think that's the focus. Again, the State forewent a life without parole sentence at two separate points. And that, for Bowsley purposes, is not actual instance. Why did the State forego life without parole after the breach? I don't know the answer to that, Your Honor. And it isn't talked about in the record. All we see in the sentencing transcript is the State proceeded to pursue a sentence on the kidnapping conviction. But so nothing stopped that you know of stopped the State from pursuing life without parole after the breach? No, other than it thought that the kidnapping charge was good. Well, it could also have thought that he was a pretty young man at the time. He was a pretty young man. That's correct. He was the shooter, however. Yes, I understand. I understand. And he had a significant criminal history before this crime, which caused the trial court to impose the departure sentence. Was there a probation report and recommendation? Yes, there was a pre-sentence investigation report. Do you recall what it recommended? Yes, 230 months consecutive on the kidnapping charge. How about on the murder? You know, I don't believe that the PSI made recommendations on the murder, because that was part of the plea agreement and the State had agreed to that sentence. So the PSI writer only talked about the kidnapping. And because Petitioner was on supervision, parole supervision, at the time he committed the crime and he was the shooter, recommended the 230-month departure sentence. Anything else? Well, I was going to address the due process claim briefly, and I'm happy to do that if the Court would like to hear a couple of comments about that, but otherwise I'll submit. Thank you. Thank you. Can you address the State's argument that they forgo or they forwent? That word is very hard. They forwent the robbery. They could have gotten time on the robbery count, had they known, and they forwent that opportunity. Yes, Your Honor. That is a dramatic change in the State's position from that taken before the District Court, which the quotation appears in my AOB, my appellant's opening brief at pages 13 or 14, where the attorney arguing on behalf of the State states, we believe, and he is saying he consulted with his other individuals and his Department of Justice before making this presentation, the burglary would merge with the robbery, and the robbery would form the basis for the aggravated murder, and then the robbery would merge with the aggravated murder. Forgive me, Your Honor, I looked at this carefully, and I consulted with my managers at the time. I did not brief it, and I will file a supplemental brief on this if the Court allows it, and that was my conclusion at the time. The only way the additional time could be imposed in this case was if the State conceded that factually and legally before the District Court, just as the State conceded that under the existing law, the law that was the final law, the law that was applicable to Mr. Moon's conviction, he did not commit the crime of kidnapping under Oregon law. In terms of just some other issues briefly, the analysis of whether there's any need for additional factual development, this issue has pended before a post-conviction court, which certainly was available to take evidence if the State believed it had additional evidence. This case pended before the District Court. The State never sought to present additional evidence in support of the kidnapping charge. In the Boosley case, the issue was whether the individual possessed a gun in connection with the drug offense, because Bailey came down and said possession required some form of actual use more in connection with the offense, and the facts had not yet been developed in Boosley. He was before the Supreme Court only on whether he had any ability to obtain some relief under Bailey. It was necessary to remand for factual findings. That was not at all the case in Mr. Moon's case. This case has been before two courts who had the ability to develop facts. If the State had additional facts to present, it could have presented that evidence. It has never done so. I would also note that we cited, in addition to the Alamalo case before this previous case, there's a Lewis v. Pedersen case out of the Second Seventh Circuit. We cite in the reply at 8, also addressing the issue of the analysis under Boosley, and saying the critical question is did the four go charges that it could have gotten the same or greater sentence on. That's the critical question. And in this case, what the State clearly has stated before the District Court and their analysis, which was undertaken with management at the DOJ, was that the only charge that could possibly have given Mr. Moon the additional sentence was the kidnapping charge. If there are no other questions, I will submit Your Honors. Thank you. Thank you, Counsel. We appreciate your arguments. Yes. Thank you. Very helpful. That ends our session for today. Thank you all. All rise. The Court is in session standing adjourned. The Court is adjourned.
judges: Fisher, Paez, Ikuta